# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Body Contour Ventures, LLC, | Case No. 19-42510 |
| Debtor. | Hon. Phillip J. Shefferly |

Body Contour Ventures, LLC,
BCA Acquisitions, LLC, and
American Aesthetic Equipment, LLC,

    Plaintiffs,                                Adversary Case No.

v.

Venus Concept USA Inc.,
a Delaware corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiffs Body Contour Ventures, LLC ("BCV"), BCA Acquisitions, LLC ("BCA"), and American Aesthetic Equipment, LLC ("AAE"), through proposed counsel, Wolfson Bolton PLLC, for its Complaint, alleges:

### PARTIES, JURISDICTION, AND VENUE

1. Defendant Venus Concept USA Inc. ("Venus") is a Delaware corporation that is registered to conduct business in Michigan.

2. Debtors,[1] including Plaintiffs, each commenced voluntary cases under Chapter 11 of Title 11 of the United States Code on February 22, 2019 ("Petition Date").

3. Debtors are continuing in possession of their property and are operating and managing their businesses as Debtors-in-possession under 11 U.S.C. §§ 1107(a) and 1108.

4. No trustee, examiner, or official committee of unsecured creditors has yet to be formed or appointed in these Chapter 11 cases.

---

[1] Debtors Body Contour Ventures, LLC, Case No. 19-42510, BCA Acquisitions, LLC, Case No. 19-42511, American Aesthetic Equipment, LLC, Case No. 19-42512, Knoxville Laser Spa LLC, Case No. 19-42513, LRX Alexandria, LLC, Case No. 19-42514, LRX Birmingham, LLC, Case No. 19-42515, LRX Charlotte, LLC, Case No. 19-42516, LRX Chicago, LLC, Case No. 19-42517, LRX Colorado Springs, LLC, Case No. 19-42518, LRX Dearborn, LLC, Case No. 19-42519, LRX East Lansing, LLC, Case No. 19-42520, LRX Grand Blanc, LLC, Case No. 19-30413, LRX Hoffman Estates, LLC, Case No. 19-42521, LRX Las Vegas Summerlin, LLC, Case No. 19-42522, LRX Mesa, LLC, Case No. 19-42523, LRX Naperville, LLC, Case No. 19-42524, LRX Novi, LLC, Case No. 19-42525, LRX Orland Park, LLC, Case No. 19-42526, LRX Plymouth-Canton, LLC, Case No. 19-42527, LRX Stone Oak, LLC, Case No. 19-42528, LRX Towson, LLC, Case No. 19-42530, LRX Troy, LLC, Case No. 19-42531, Premier Laser Spa of Greenville LLC, Case No. 19-42532, Premier Laser Spa of Indianapolis LLC, Case No. 19-42533, Premier Laser Spa of Louisville LLC, Case No. 19-42534, Premier Laser Spa of Pittsburgh LLC, Case No. 19-42535, Premier Laser Spa of St. Louis LLC, Case No. 19-42536, and Premier Laser Spa of Virginia LLC, Case No. 19-42537

5. Detailed facts about Debtors and the reasons for the commencement of their Chapter 11 cases are set forth in the *Declaration of Richard C. Morgan in Support of Chapter 11 Filings*. [Docket No. 22].

6. This is a core proceeding under 28 U.S.C. § 157(b)(2).

7. This Court has jurisdiction over this matter under 28 U.S.C. § 1334.

8. Venue is proper under 28 U.S.C. § 1408 and 1409.

## BACKGROUND

9. Venus is a party to numerous Service Agreements with non-Debtor entities. An example is the Service Agreement dated October 20, 2016 and attached as Exhibit 1, which purports to be between Venus and "American Aesthetic Equipment, LLC-Mesa" ("Agreement"). A copy of the Agreement is attached as Exhibit 1, which Agreement is substantially the same as the other agreements between Venus and non-Debtor entities.

10. "American Aesthetic Equipment, LLC-Mesa" is not an assumed name of AAE.

11. The Agreement is governed by Florida law. (Exhibit 1, ¶ 25).

12. The Agreement states that Venus will sell and deliver certain equipment (the "Equipment") to "American Aesthetic Equipment, LLC-Mesa", but that Venus retains title to the Equipment until the purchase price

is paid by "American Aesthetic Equipment, LLC-Mesa".  (Exhibit 1 ¶ 11) ("[I]t is agreed that until the Aggregate Purchase Price is paid in full, title of the Equipment belongs to Venus Concept alone  . . . .").

13. AAE owns and possesses the Equipment.

14. Interests in the Equipment are governed by the Uniform Commercial Code.

15. As set forth below, (i) Venus has no enforceable security interest in the Equipment; and (ii) even assuming that Venus does have an enforceable interest in the Equipment, Venus' interest in the Equipment is limited to that of a security interest in the Equipment and Venus has not perfected its security interest.

**COUNT I – AVOIDANCE OF CLAIMED SECURITY INTEREST**

16. AAE incorporates by reference the allegations contained in the previous paragraphs of this Complaint.

17. AAE may avoid any transfer of property of AAE or any obligation incurred by AAE that is voidable by a creditor that extends credit to AAE at the Petition Date and that obtains with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.  11 U.S.C. § 544(a)(1).

18. Under Florida law, specifically, Fla. Stat. Ann. § 679.2031, an enforceable security interest must include all of the following conditions:

(a) Value has been given;

(b) The debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(c) One of the following conditions is met:

1. The debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;

2. The collateral is not a certificated security and is in the possession of the secured party under s. 679.3131 pursuant to the debtor's security agreement;

3. The collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under s. 678.3011 pursuant to the debtor's security agreement; or

4. The collateral is deposit accounts, electronic chattel paper, investment property, letter-of-credit rights, or electronic documents, and the secured party has control under s. 677.106, s. 679.1041, s. 679.1051, s. 679.1061, or s. 679.1071 pursuant to the debtor's security agreement.

19. No authenticated security agreement by AAE exists.

20. The Agreement purporting to grant a security interest was executed by "American Aesthetic Equipment, LLC-Mesa." (Exhibit 1).

21. AAE did not grant a security interest in favor of Venus in the Agreement or any of the related agreements.

22. AAE may avoid Venus' security interest in the Equipment under 11 U.S.C. § 544(a)(1).

23. Under Florida law, specifically, Fla. Stat. Ann. § 671.201, the definition of a "security interest" states in relevant part that "the retention or reservation of title by a seller of goods, notwithstanding shipment or delivery to the buyer under s. 672.401, is limited in effect to a reservation of a security interest."

24. Under Fla. Stat. Ann. § 672.401(1), "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."

25. To the extent that it is determined that Venus has a valid security interest in the Equipment, Venus failed to record a UCC financing statement and is therefore unperfected.

26. Any security interest asserted by Venus in the Equipment is therefore subordinate to AAE's interests under § 544(a)(1) and Fla. Stat. Ann. § 679.3171(1)(b).

27. AAE may avoid any security interest of Venus under 11 U.S.C. § 544(a)(1).

28. Any transfer avoided under 11 U.S.C § 544 is automatically preserved for the benefit of the bankruptcy estate with respect to property of the estate. 11 U.S.C. § 551.

**WHEREFORE,** AAE respectfully requests that this Court avoid Venus' security interest in the Equipment, preserve the avoided transfer for the benefit of the bankruptcy estate, and grant AAE such additional relief as is just and equitable.

## **COUNT II – DECLARATORY JUDGMENT**

29. AAE incorporates by reference the allegations contained in the previous paragraphs of this Complaint.

30. Count II is pled in the alternative to Count I.

31. To the extent that Venus claims to have a security interest in the assets of AAE and/or the Equipment, a controversy exists with respect to the security interests in the assets of AAE, including the Equipment, and AAE seeks to have Venus' security interest declared void and/or unenforceable.

32. No authenticated security agreement by AAE exists.

33. Venus never recorded a financing statement against the assets of AAE.

34. Venus has no perfected security interest in the assets of AAE and is not the owner of the Equipment.

35. AAE owns the Equipment free and clear of any interest of Venus.

**WHEREFORE,** AAE respectfully requests that this Court declare Venus' security interest in the assets of AAE void and/or unenforceable, declare AAE the owner of the Equipment, and grant AAE such additional relief that is just and equitable.

## COUNT III – AVOIDANCE OF PREFERENTIAL TRANSFERS

36. BCV, BCA, and AAE incorporate by reference the allegations contained in the previous paragraphs of this Complaint.

37. During the 90-day period before the Petition Date, Plaintiffs collectively transferred property to or for the benefit of Venus in the amount of at least $151,568.60 as set forth on Exhibit 2.

38. The transfers were transfers of an interest in the respective Plaintiffs' property – namely, money from Plaintiffs' respective bank account(s).

39. The transfers were to or for the benefit of Venus.

40. At the time these transfers were made, Venus was a creditor of Plaintiffs on account of goods sold by Venus to Plaintiffs. Consequently, the transfers were made on account of an antecedent debt owed to Venus.

41. Under 11 U.S.C. § 547(f), Plaintiffs are presumed to have been, and were in fact, insolvent at the time the transfer was made as evidenced by, among other things: Plaintiffs' respective significant secured and unsecured liabilities and a general inability to pay debts as the debts became due.

42. Due to the size of claims and shortfall in recoverable assets in the respective 547 Plaintiffs' bankruptcy case, creditors will not be paid the full amount of their claims.

43. The transfers enabled Venus to receive more than Venus would have received if (i) Plaintiffs' cases were cases under Chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) Venus received payment of such debt to the extent provided for by the provisions of the Bankruptcy Code.

44. Venus was the initial transferees of the transfers, or in the alternative, Venus was either the entity for whose benefit the transfers were made or was the immediate or mediate transferees of the initial transferees receiving the transfers.

45. The transfers constitute preferential transfers that are avoidable under 11 U.S.C. § 547(b) and recoverable from Venus under 11 U.S.C. § 550(a).

46. Any transfer avoided under 11 U.S.C § 547 is automatically preserved for the benefit of the bankruptcy estate with respect to property of the estate. 11 U.S.C. § 551.

47. Plaintiffs are entitled to a judgment under 11 U.S.C. §§ 547(b), 550(a), and 551 avoiding and recovering the transfers, or the value thereof, for the benefit of Plaintiffs' estates.

**WHEREFORE,** Plaintiffs respectfully requests that this Court (i) avoid the transfers, (ii) direct that the transfers be set aside, (iii) recover the transfers, or the value thereof, from Venus for the benefit of Plaintiffs' estates; and (iv) grant Plaintiffs such additional relief that is just and equitable.

## **COUNT IV – CLAIM DISALLOWANCE – 11 U.S.C. § 502(d)**

48. Plaintiffs incorporate by reference the allegations contained in the previous paragraphs of the Complaint.

49. The transfers set forth above in Count III are avoidable under 11 U.S.C. §§ 547.

50. Venus is the transferee of the transfers.

51. The transfers are recoverable under 11 U.S.C. § 550.

52. Venus has not paid or surrendered the transfers.

53. Any present or future claims of Venus against Plaintiffs' estates should be disallowed under 11 U.S.C. § 502(d).

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs under 11 U.S.C. § 502(d) disallowing any present or future claims Venus may have against Plaintiffs' estates.

          Respectfully submitted,

          WOLFSON BOLTON PLLC

Dated: February 26, 2019    By: /s/ Anthony J. Kochis
          Scott A. Wolfson (P53194)
          Anthony J. Kochis (P72020)
          3150 Livernois, Suite 275
          Troy, MI 48083
          Telephone: (248) 247-7105
          Facsimile: (248) 247-7099
          E-Mail: akochis@wolfsonbolton.com



EXHIBIT 1

# SERVICE AGREEMENT

4556 N. Hiatus Road • Sunrise • Florida
33351 • USA • Fax: 855-907-0115

AGREEMENT # 00003729
DATE: **10/20/2016**
VENUS SALES REP: **Rick Partridge**
CUSTOMER #

THIS AGREEMENT BETWEEN VENUS CONCEPT USA INC. ("PROVIDER") AND American Aesthetic Equipment, LLC-Mesa ("CUSTOMER")

## CUSTOMER INFORMATION

| Contact Name & Title: | | | Bus.Tel.# | Cell Phone # |
|---|---|---|---|---|
| Tony Zanlungo | | | | (248) 756-3499 |
| Business Full Legal Name | | | Fax # | Email Address |
| American Aesthetic Equipment, LLC-Mesa | | | | tony@lightrx.com |
| Billing Address | | | Shipping Address | |
| 1652 S. Val Vista Drive | | | 1652 S. Val Vista Drive | |
| Bldg 7-Suite 127 | | | Bldg 7-Suite 127 | |
| City | State | Zip Code | City | State | Zip Code |
| Mesa | Arizona | 85204 | Mesa | Arizona | 85204 |
| No. Years In Business | Fed Tax ID# | | Business Type | Specialty |
| | | | [ ] Partnership  [ ] Proprietorship  [ ] Corporation | |

## EQUIPMENT INFORMATION

| Product | Description | Sales Price | Quantity | Total Price |
|---|---|---|---|---|
| Versa | Versa Basic System - Applicators sold separately. Operating Manual, 2 x Ultrasound Gel, 1 canister disinfectant wipes. Clinical Training & Certification included for 4 technicians/nurses. Four (4) Year Limited Warranty | 77,000.00 | 1.00 | 77,000.00 |
| HR650XL | HR650 XL - Versa IPL - 20x30mm | 0.00 | 1.00 | 0.00 |
| HR690XL | HR690XL - Versa IPL - 20x30mm | 0.00 | 1.00 | 0.00 |
| SR515 | SR515 - Versa IPL - 30X10mm | 0.00 | 1.00 | 0.00 |
| SR580 | SR580 - Versa IPL - 10x30mm | 0.00 | 1.00 | 0.00 |
| Versa Diamondpolar | Diamondpolar - Versa - RF Applicator | 0.00 | 1.00 | 0.00 |
| Versa Viva applicator | Viva - Versa - RF applicator | 0.00 | 1.00 | 0.00 |

|  |  |
|---|---|
| Shipping Tax: 0.00 | SubTotal: 77,000.00 |
| | **Shipping:** 500.00 |
| | Tax: 6,198.50 |
| | Grand Total: 83,698.50 |

## NOTES

$5000 License Fee to be paid as follows:
$2500 + shipping + tax ($3201.25 ) due upon signing.
$2500 + tax due November 25, 2016.
Monthly installments commence December 25/16.
4 Year Limited warranty
4 IPL Replacement applicators
The terms offered herein expire if this agreement is not signed on or before October 21, 2016.

## PAYMENT TYPE

Deposit Method: Credit Card

| Credit Card #: | Cardholder's Name: | Expiry Date: |
|---|---|---|

Payment Method: Please choose from the following TWO (2) options listed below

[ ] Automatic Withdrawal — Please complete the ACH Debit form and attach a VOID check

[ ] Credit Card* — Please complete the information below

| Credit Card #: | Cardholder's Name: | Expiry Date: |
|---|---|---|

*Please note: a 3% surcharge will be added to total of each credit card payment

## PERSONAL GUARANTY

The undersigned unconditionally, personally guarantees to Venus Concept that he/she will make all payments and meet all obligations required under this Agreement and any supplements fully and promptly. The undersigned agrees that Venus Concept may make other arrangements including compromise or settlement. The undersigned will waive all defenses and notice of those changes and will remain responsible for the payment and obligations of this Agreement. Venus Concept is not required to notify the undersigned of any default. It is expected, however, that the undersigned will immediately pay in accordance with the default provision of this guaranty. The undersigned expressly consents to the jurisdiction of the court set out in the Terms and Conditions of this agreement.

## CUSTOMER

| Signature of Personal Guarantor | Date | Print Name | Home or Cell # |
|---|---|---|---|
| X | | | |
| Home Address | | | SSN# |

## ACKNOWLEDGEMENT

| **PROVIDER** (Venus Concept Authorized Signature) | | **CUSTOMER** |
|---|---|---|
| This agreement shall not become binding until Provider has accepted this agreement | | THE UNDERSIGNED ACKNOWLEDGES HAVING READ THE ENTIRE AGREEMENT AND ACCEPTS THE TERMS AND CONDITIONS |
| Agreement Commencement Date: | | |
| Print Name and Title | Signature | Customer Full Legal Name | Date |
| NOTES | | Name | Title |

19-04099-pjs · Doc 1 · Filed 02/26/19 · Entered 02/26/19 17:01:32 · Page 12 of 20
Venus Concept · 4556 N. Hiatus Road · Sunrise · USA · 33351 · Phone 1-888-907-0115 Fax 1-855-907-01
Page 1 of 7    www.VenusConcept.com    Customer Initials _____



# SERVICE AGREEMENT

4556 N. Hiatus Road • Sunrise • Florida
33351 • USA • Fax: 855-907-0115

AGREEMENT # **00003729**
DATE: **10/20/2016**
VENUS SALES REP: **Rick Partridge**
CUSTOMER #

| | Authorized Signature | X |
|---|---|---|

19-04099-pjs · Doc 1 · Filed 02/26/19 · Entered 02/26/19 17:01:32 · Page 13 of 20

Page 2 of 7 — Venus Concept · 1350 N. Hiatus Road · Sunrise · USA · 33351 · Phone 888-907-0115 Fax 855-907-01
www.VenusConcept.com

Customer Initials _____



# SERVICE AGREEMENT

4556 N. Hiatus Road • Sunrise • Florida
33351 • USA • Fax: 855-907-0115

AGREEMENT # **00003729**
DATE: **10/20/2016**
VENUS SALES REP: **Rick Partridge**
CUSTOMER #

SCHEDULE

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PAYMENT STRUCTURE [EXLUDING SHIPPING AND ALL APPLICABLE TAXES] | | | |
| Line | Number of Payments | Amount | Tax | Payment Due | Total Amount | Comments |
| 1 | 2 | 2,500.00 | 201.25 | 2,701.25 | 5,402.50 | |
| 2 | 36 | 2,000.00 | 161.00 | 2,161.00 | 77,796.00 | |

19-04099-pjs    Doc 1    Filed 02/26/19    Entered 02/26/19 17:01:32    Page 14 of 20
Customer Initials _____



# SERVICE AGREEMENT

4556 N. Hiatus Road •Sunrise • Florida
33351 • USA • Fax: 855-907-0115

AGREEMENT # 00003729
DATE: **10/20/2016**
VENUS SALES REP: **Rick Partridge**
CUSTOMER #

### Exhibit A to Services Agreement Dated 10/20/2016

### TERMS AND CONDITIONS

(the "**Conditions**", and together with the Services Agreement, the "**Agreement**")

This Exhibit A supplements the terms and conditions of the Services Agreement dated 10/20/2016 by and between Venus Concept USA Inc., a Delaware corporation, (hereinafter "Venus Concept") and American Aesthetic Equipment, LLC-Mesa (the "Customer"). Venus Concept and the Customer agree as follows:

1. Nature of the Transaction - Subject to the terms and conditions set forth herein, Venus Concept agrees: (A) to sell and deliver to the Customer, and Customer agrees to purchase and receive from Venus Concept the equipment described in the Services Agreement to which these Conditions are attached (the "Equipment") and the limited warranty, periodic practice and clinical training services as more fully specified herein (the "Services"); and (B) to grant the Customer on the Installation Date (as defined below) and for the Term of this Agreement (as defined below) a revocable, non-exclusive, non-transferable, limited right to use the applications and software owned by Venus Concept and incorporated into or used in conjunction with the Equipment (the "Programs") (the Equipment, together with the incorporated Programs shall be referred to herein as the "System"). Customer's rights in the Programs are expressly limited to the use of the Programs by Customer as part of and in conjunction with the use of the System. Customer shall not: (i) assign, transfer, or sublicense the Programs; and/or (ii) reverse engineer or decompile the source code thereof.

2. Term of Agreement and Price of Services – In consideration for the System and the provision of the Services during the Term (as defined below), the Customer shall pay to Venus Concept, in non-refundable installments, the aggregate amount outlined in the Services Agreement (the "Aggregate Purchase Price"). This Agreement shall become effective upon the execution thereof and shall remain in full force and effect until terminated pursuant to the terms and conditions set forth herein (the "Term").

3. Delivery and Installation – Delivery is defined as a signed Agreement with Venus Concept, and System shipped by Venus Concept. Installation is defined as placing and operating the System at the Customer's designated premises, completion of the Operation Training (as defined below) and issuing a certificate by Venus Concept allowing the Customer's personnel to use the System. The date of placing the System at the Customer's premises shall be defined as "Installation Date". Customer confirms and agrees that Customer's personnel (such as technicians, nurses and other operators of the System must receive written certification from Venus Concept prior to using the System. Failure to obtain certification from Venus Concept will void the Limited Warranty and all legal claims brought forth from misuse or adverse reactions will be the sole responsibility and liability of the Customer.

4. System Selection – The Customer has personally selected the System. Venus Concept is not providing any medical care to Customer's patients or any assistance to Customer in connection with the selection or performance of medical procedures and/or care of Customer's patients. Customer has the sole and ultimate responsibility for any medical and/or surgical or other procedures performed through, in conjunction with, or by the use in any way, of the System. Customer assumes and has sole responsibility and liability for providing adequate and effective safeguards and safety devices necessary to provide a safe facility and to fully protect all Customer personnel, patients and third parties that may come in contact with the system from bodily injury, death or other damage that otherwise may result from the use, operation, setup or maintenance of the System. Customer agrees to indemnify, defend and hold Venus Concept at its first demand harmless from any and all expenses, costs and damages, including attorney's fees, in respect of any claims for bodily injury, death or other damage arising out of the use of the System, including, without limitation, any medical and/or surgical procedures performed by the Customer using the System unless said bodily injury, death or other damage is caused solely by the negligence of Venus Concept or solely as a result of a defect in the System.

5. Payments – The Customer shall, without notice from or request by Venus Concept, pay to Venus Concept during the Term, the total number of monthly installments set out in the Services Agreement (the "Monthly Installments"). Such installments shall be payable in advance to Venus Concept at the address indicated above (or other address notified by Venus Concept to the Customer) as follows: first Monthly Installment is due 30 days from delivery of the System to Customer. Subsequent payments throughout the Term shall be payable every 30 days thereafter. Payments and any other amounts due under this Agreement are payable in full without any set-off, compensation, withholding or abatement.

6. Effect of Termination
    (1) In the event of expiration or termination of this Agreement for any reason, the right to use the System shall automatically terminate and the Customer shall immediately cease using the Programs or
    (2) In the event of termination by the Customer pursuant to Section 6(1) above or termination by Venus Concept pursuant to Section 6(2) below ("Justified Termination"), then in addition to the provisions of subsection 6 above, the following provisions shall apply to such termination:
        a. Venus Concept shall cease providing the Customer with the Maintenance Services (as defined below);
        b. The Customer shall be obligated to pay to Venus Concept any amounts which are due and payable pursuant to this Agreement as of the effective date of termination;
        c. Venus Concept shall not be obligated to refund or return any amounts which were already paid to it prior to the effective date of termination (the "Amounts Paid");
        d. Venus Concept shall be entitled to repurchase the System from the Customer in consideration for USD$ 1.00 and upon the payment of such consideration Venus Concept shall be deemed the sole and exclusive owner of the System; and
        e. The Customer hereby irrevocably and in advance waives any claim or demand against Venus Concept with respect to the return or refund of any of the amounts it shall have already paid to Venus Concept.
    (3) In the event that Customer terminates this Agreement in circumstances other than as specified in Section 6, such termination shall be deemed a Default and if it occurs during the first 12 months of the Term, then in addition to the provisions of sections 7 below (which shall apply to such termination), any unpaid balance of the Monthly Installments in respect of such first 12-month period, shall immediately and automatically become due and payable and the Customer shall pay it in full prior to the effective date of termination.

7. Interest on Overdue Payments - The Customer shall, without notice, pay interest at the rate of twenty four per cent (24%) per annum, calculated and compounded monthly (the "Interest"), on any payments which have become due pursuant to this Agreement and have not been paid on their due dates, from the date any such amount becomes due or interest bearing, before and after maturity, default and judgment until such arrears or other amounts are paid in full.

8. Limited Warranty
        a. What Is Covered. Venus Concept grants a limited warranty for the System as specified in this Section 8 ("Limited Warranty"). This Limited Warranty covers defects in material and workmanship in the (i) System, (ii) applicators purchased at the same time that a System is purchased (the "Bundled Applicators"), and (iii) applicators purchased separately from a System (the "Stand-Alone Applicators") as identified in the Services Agreement.



# SERVICE AGREEMENT

4556 N. Hiatus Road •Sunrise • Florida
33351 • USA • Fax: 855-907-0115

AGREEMENT # **00003729**
DATE: **10/20/2016**
VENUS SALES REP: **Rick Partridge**
CUSTOMER #

b. Who is Covered. This Limited Warranty extends solely to the Customer who purchased the System from Venus Concept. This Limited Warranty is non-transferable and non-assignable by the Customer. Venus Concept shall have no obligations from claims made under a transferred warranty in the event that the Customer attempts an assignment of the Customer's rights under this Limited Warranty.

c. How Long. The term of this Limited Warranty (the "Warranty Period") is a period of three (3) years from the Installation Date. To the extent that Venus Concept determines, in its sole discretion, that it should replace any part of the System, Venus Concept warrants any such replacement system, or system accessories for the duration of the Warranty Period.

d. Suspension of Warranty Coverage. Service coverage under this Limited Warranty will be automatically suspended (i) during any periods of non-payment of any charges due to Venus Concept by the Customer (including if a check does not clear); and/or (ii) during any period that Customer retains possession of a Loaner system (defined below), Limited Warranty service coverage shall recommence when Venus Concept receives payment in full of any and all charges due, and that although warranty service will not be available in respect of and during any period of non-payment, the Warranty Period will continue to run during this time.

e. What Venus Concept Will Do. Venus Concept will, within the applicable Warranty Period, at Venus Concept's sole option, repair or replace any defects in material or workmanship in the System without any costs to the Customer for parts or labor (expect as specifically stated below). To the extent that Venus Concept determines that it should replace a System, Venus Concept may do so using another System that is of the same model and in good working condition.

f. What is Not Covered. This Limited Warranty does not cover any defects and damages caused by the fact that the System, including Stand-Alone Applicators and Bundled Applicators, have been subject to: improper installation, unauthorized opening or repair, repair by use of unauthorized spare parts, accident, misuse (including improper storage), rough handling, abuse, and/or modification of the System, in the Customer's transportation of the System, by an act of God, use of the System in violation of the manuals and/or instructions, the use with accessories not manufactured and supplied by Venus Concept, the use for any purpose other than one for which the System was manufactured, damage caused by unauthorized parts, and/or requests for repair for any other problem that Venus Concept cannot replicate (collectively and individually "Excluded Repairs"). This Limited Warranty also does not cover any equipment, products or accessories sold or supplied with the System which are manufactured by a third party. If Venus Concept assumes the repair of an Excluded Repair, Venus Concept will bill the Customer for Excluded Repairs at $150 USD per hour plus the cost of the parts, shipping costs and Venus Concept's then current handling fee for the inspection and diagnosis of each of the Excluded Repairs.

g. Venus Concept may cancel the Limited Warranty if it is found that treatments are performed without the use of the Venus Concept proprietary Glide Glycerin product. Failure to use this specially formulated glycerin could lead to patient complications, less than optimal clinical results, increased patient discomfort and equipment failure. If it is determined that the Customer is not using Glide Glycerin purchased from Venus Concept, Venus Concept may cancel or limit warranty coverage, as it deems fit.

h. Service Loaner. If Venus Concept determines that it is necessary for the Customer to return any System/applicators for warranty service, Venus Concept will use its best efforts to deliver a service loaner system (the "Loaner") to the Customer within one (1) to three (3) business days following such request.

The warranties provided in this section 8 constitute Venus Concept's sole and exclusive liability for defective or nonconforming systems and shall constitute customer's sole and exclusive remedy for defective or nonconforming systems. These warranties are in lieu of all other warranties express or implied or statutory, including, but not limited to, implied warranties of merchantability or fitness for a particular purpose, and are in lieu of all obligations or liabilities on the part of Venus Concept for damages.

9. Use - The Customer shall use the System in a careful and prudent manner, in accordance with the instructions and manual provided to Customer by Venus Concept, and not for any unlawful purpose and shall at the Customer's expense, comply with and conform, and shall cause any and all of its personnel to comply with and conform to all applicable laws, ordinances and regulations (including laws, ordinances and regulations concerning environmental matters) relating to the possession, use or maintenance of the System. The System shall be operated and used only by those persons who are authorized and qualified to operate such systems, pursuant to applicable laws and Venus Concept's instructions and manual. The Customer shall only use the System in connection with its business and only for professional purposes.

From the time of Venus Concept's shipment of the Equipment to the delivery location designated by the Customer ("Delivery Time"), the Customer shall bear the entire risk of loss, damage, destruction, theft, seizure or governmental taking of the System or any part thereof (any such case being a "Loss"), regardless of whether it is caused by any default or neglect of the Customer. No Loss shall relieve the Customer of its obligations hereunder. The Customer shall maintain at its expense and appropriate insurance against such Losses until the Aggregate Purchase Price is paid in full.

10. Training: Venus Concept shall provide the Customer, free of charge, with System-operation training services for up to 4 technicians and/or nurses of the Customer's personnel, as may be necessary for them to operate and use the System in accordance with Venus Concept's manuals ("Operation Training"). In addition to the aforesaid Operation Training, the Customer may request supplementary training services, as follows:
a. Option 1: includes ten (10) minutes via Skype per person and a thirty (30) minute group Question and Answer session at no additional charge.
b. Option 2: A member of Venus Concept's clinical team will visit the Customer's site and train its team for two (2) to four (4) hours depending on the number of attendees (maximum number of attendees is _____). The training fees for up to 2 clinical staff shall be $US 800 plus travel costs. Training fee for any additional Staff shall be $US 300 per person.
c. Option 3: Web based Certification or Recertification. Two (2) hour basic training program with a Venus Concept trainer will be billed at additional charge of $US 100 per person.

11. Title and Identification – OOnly after Venus Concept has received full payment by the Customer of the Aggregate Purchase Price, Customer shall have the exclusive right, title and interest in or to the Equipment. Accordingly, it is agreed that until the Aggregate Purchase Price is paid in full, title of the Equipment belongs to Venus Concept alone and the Customer shall not subject the Equipment to any claim, privilege, lien, charge, encumbrance, levy, security interest, mortgage, pledge, hypothecation, seizure, trust, attachment, judicial process, ownership interest, license, sublease or other right in favor of any person (in any such case an "Encumbrance") unless such Encumbrance is authorized by Venus Concept in writing. At Venus Concept's request, the Customer shall at the Customer's expense affix and maintain on the Equipment, in a manner and places satisfactory to Venus Concept, labels, plates or other marks supplied by Venus Concept to identify the Equipment as manufactured by Venus Concept.

12. Location and Inspection – During the Term, the Customer shall maintain the System at the location specified in the Services Agreement and shall not move the System from such location. Venus Concept shall have the right to inspect the System and the Customer's insurance records at any time.

13. Insurance – Customer shall, at its own expense, place and maintain a general liability insurance in adequate amounts as customary in the industry for the System, which covers liabilities for damages on account of bodily or personal injury or death to any person, or damages to property of any person or entity. Such insurance shall extend to all liabilities of the Customer arising out of its use or possession of the System and shall include Venus Concept as an additional insured.

14. Leasing – Until the Aggregate Purchase Price is paid in full, the Customer shall not sublet or part with possession or control of the System or permit its use by any person other than the Customer or employees of the Customer who are qualified and competent to operate the System. Neither this Agreement nor the Customer's rights hereunder shall be assigned by the Customer except with Venus Concept's prior written consent and no assignment shall release the Customer from its obligations hereunder.

15. Surrender – In the event of termination of the Agreement (including without limitation, a Justified Termination (as defined below)), the Customer, at its expense shall immediately surrender control of the System to Venus Concept as provided below, and if the Default under the Justified Termination is curable, Customer shall immediately surrender the System to Venus Concept in the event that such Default has not been remedied within 30 days. In such events, Customer shall: (a) return the System to Venus Concept at Venus Concept's nearest office or other place specified by Venus Concept; or (b) if requested by Venus Concept, dispose of the System as Venus Concept reasonably directs, including disposition in a manner which will avoid any dangerous use thereof or damage or injury to any person or property therefrom. The Customer hereby irrevocably agrees that if the System is

19-04099-pjs  Doc 1  Filed 02/26/19  Entered 02/26/19 17:01:32  Page 16 of 20

Venus Concept · 4556 N. Hiatus Road · Sunrise · USA · Fax: 855-907-01
Page 5 of 7    www.VenusConcept.com    Customer Initials _____



# SERVICE AGREEMENT

4556 N. Hiatus Road • Sunrise • Florida
33351 • USA • Fax: 855-907-0115

AGREEMENT # 00003729
DATE: **10/20/2016**
VENUS SALES REP: **Rick Partridge**
CUSTOMER #

not returned to Venus Concept as provided above, the provisions of the Limited Warranty contained herein shall not apply to any such System and Venus Concept shall be entitled and the Customer hereby irrevocably agrees and instructs Venus Concept to take any action it deems necessary (subject to applicable law) to disconnect, disable or otherwise cause the cessation of the operation of the System. Wherever the Customer is required to return the System to Venus Concept the System shall be in good repair, condition and working order and the Customer shall pay all cost of maintenance and restoration of System returned to Venus Concept necessary to restore it to its condition on the date this Agreement commenced, normal wear and tear excepted. The Customer shall, if Venus Concept so requests, store the System at the Customer's risk and expense and as Venus Concept agent for a period of up to ninety (90) days after the end of the Term. The Customer shall not use the System or pay payments for the System during such period but shall otherwise be bound by all terms of this Agreement during such period.

16. Entry – If the Customer fails to surrender the System to Venus Concept as required under this Agreement, Venus Concept may, without notice to the Customer or resort to any legal process, but subject to any applicable law, enter any premises where the System is located and take possession of and remove and disable such System.

17. Indemnity - The Customer hereby indemnifies Venus Concept and agrees to save Venus Concept harmless from and against all loss, cost, liabilities, claims, legal proceedings and expenses (including legal fees and costs) whatsoever arising in connection with this Agreement, the right to use the Programs, the System, the manufacture, selection, purchase, ownership, delivery, possession, use, operation, Loss or return of the System, Taxes, the recovery of claims under any insurance policy relating to the System, any Default by the Customer, the exercise by Venus Concept of any rights or remedies hereunder or any entry or taking of possession, removal or disabling the System.

18. Default - Each of the following is a material default by the Customer (a "Default"), entitling Venus Concept to immediately terminate the Agreement (subject to Section 18 (ii)) (a "Justified Termination"):
    (a) the Customer fails to make any payment or pay any other amounts due under this Agreement (as may be amended from time to time) within ten (10) days after the same is due and payable (or earlier if required pursuant to the Agreement); or
    (b) any representation or warranty made by the Customer to Venus Concept in or in connection with this Agreement is incorrect; or
    (c) the System or any other part thereof is subjected to an Encumbrance not caused by Venus Concept, the Customer sells or attempts to sell or grant an Encumbrance on any part of System or the value of the System is materially impaired due to Loss, in all cases, during the period that Monthly Installments are outstanding and unpaid; or
    (d) d. the Customer makes any assignment for the benefit of its creditors, becomes insolvent, commits any act of bankruptcy, takes any action to wind up or dissolve, ceases or threatens to cease to do business as a going concern, is subject to a change in control in fact or in law or seeks any arrangement or composition with its creditors; or any proceeding in bankruptcy, receivership, winding-up, dissolution, liquidation or insolvency is commenced by or against the Customer or its property; or
    (e) e. Venus Concept in good faith believes that the prospect of payment or performance by the Customer under this Agreement is or is about to be impaired or the System is or is about to be placed in jeopardy.
    (f) f. The Customer has made representations or promises to its clients or otherwise in the framework of sales promotions or marketing activity which are in contradiction with, or are not included in Venus Concept's manuals and materials.

19. Effect of Default; Damages - A loss to Venus Concept upon a Default is dependent in part on the cost of the System to Venus Concept, the Term and the Aggregate Purchase Price expected by Venus Concept from the sale of the System.
(i) Upon any Default and in addition to Venus Concept's other rights and remedies under this Agreement and otherwise available at law or in equity:
    (a) the Customer shall pay forthwith (without notice) to Venus Concept as liquidated damages, and not as a penalty, an amount (the "Liquidated Damages") equal to the aggregate of:
        (i) unpaid payments and other amounts payable hereunder and unpaid as of the date of Default, and
        (ii) the unpaid value of:
            (A) the remaining Monthly Installments payable from the date of Default, and
            (B) amounts otherwise payable under the Agreement, and
        (iii) any Enforcement Costs (as defined below) incurred by Venus Concept, and
        (iv) Interest thereon (as defined above) from the date of the Default until payment in full.
    To the extent that the Liquidated Damages are deemed to include any Taxes which Venus Concept is required to remit to any taxation authority, the Liquidated Damages shall be increased by the amount necessary to ensure that the net amount of the Liquidated Damages retained by Venus Concept after remitting all applicable Taxes will be equal to the amount calculated above;
    (b) upon Venus Concept's demand, the Customer, at the Customer's expense, shall forthwith surrender control of the System to Venus Concept pursuant to clause 15 as though the Term had expired;
    (c) Venus Concept in its sole and absolute discretion, may, immediately, at any time (even prior to termination of this Agreement pursuant to the terms hereof) and without notice to the Customer or resort to legal process: (i) remotely disconnect or otherwise disable the operation of the System; and/or (ii) subject to applicable law, take possession of the System or take any action it deems necessary to cause the cessation of the operation of the System, and such actions in no event shall be deemed as a breach by Venus Concept of its obligations hereunder;
    (d) the rights of the Customer hereunder in respect of the System, including the right to use and possess the System, shall cease and terminate absolutely without limiting the Customer's liability or obligations hereunder; and
    (e) Venus Concept may by notice in writing terminate the Agreement or any other agreement Venus Concept may have with the Customer.
(ii) ) In the event of a curable Default, the Customer shall be provided with 30 days to cure such Default, an if the applicable Default has not been remedied within such 30 days, Venus Concept may terminate this Agreement immediately.
(iii) All rights and remedies of Venus Concept, either under this Agreement or at law or in equity or otherwise afforded to Venus Concept, are cumulative and not alternative. Venus Concept's costs and expenses incurred as a result of a Default ("Enforcement Costs") (including all costs and expenses in respect of collection, legal fees, repossession, repair of System, enforcement of Venus Concept's rights or remedies, sale or re-lease costs or other realization costs) shall be paid by the Customer to Venus Concept forthwith on demand, with Interest accruing thereon from the date such costs and expenses were incurred until payment in full.

20. Sale on Default - Venus Concept may after a Default sell, lease or otherwise dispose of the System at a public or private sale with or without notice to the Customer and upon such terms and in a manner as Venus Concept may determine.

21. Venus Concept's Warranties - Venus Concept shall not be liable for any loss, damage or expense of any kind or nature, whether direct, indirect or consequential, caused by the system or use, maintenance or possession thereof, by the inadequacy of the system rights or by any interruption of service or loss of use of the system or for any loss of business or damage whatsoever and howsoever caused.

22. Assignment - This Agreement and all rights, remedies and benefits of Venus Concept hereunder may be assigned by Venus Concept without notice to or the consent of the Customer and the Customer hereby accepts such assignments and waives any claim with respect to the act of assignment and the delivery of a copy of any assignment document.

23. Name Change - The Customer shall promptly notify Venus Concept in writing of: (a) any change in the Customer's name; (b) any transfer, authorized or unauthorized, by the Customer of any interest in or benefit from the System; (c) any change, authorized or unauthorized, by the Customer in the location of any System; and (d) any change in location of the Customer's Head Office specified above.

19-04099-pjs · Doc 1 · Filed 02/26/19 · Entered 02/26/19 17:01:32 · Page 17 of 20

Venus Concept · 4556 N. Hiatus Road · Sunrise · USA · Phone: 1-877-907-0115
Page 6 of 7 · www.VenusConcept.com · Customer Initials _____



# SERVICE AGREEMENT

4556 N. Hiatus Road •Sunrise • Florida
33351 • USA • Fax: 855-907-0115

AGREEMENT # **00003729**
DATE: **10/20/2016**
VENUS SALES REP: **Rick Partridge**
CUSTOMER #

24. Information - The Customer agrees that Venus Concept may provide copies of this Agreement and/ or information concerning the Customer and its obligations hereunder to any person.

25. General Provisions This Agreement shall be governed and construed by the laws of the State of Florida, USA and without giving effect to conflict of laws principles thereof, and only the competent courts in Miami, Florida, USA shall have jurisdiction in any conflict or dispute arising out of or relating to the Agreement or the transactions contemplated hereby.

26. Branding and Quality Control - Venus Concept requires that all of its systems meet its high technical, quality and safety standards and accordingly it provides authorized users an activation code to use the Venus system. Activations codes are provided monthly and such codes are provided to the customer subject to Venus Concept's technical, quality and safety inspection standards, and provided that all Customer's financial obligations are met. Customer agrees not to offer treatments, use the System and any images, names or logos related to Venus Concept and its products, including wording that refers specifically to Venus Concept's technology (i.e. combining RF and Pulsed Magnetic fields, etc.) for promotional activities through group buying providers such as Groupon, Living Social or any other vehicle by which significant discounts are promoted without the prior written consent of Venus Concept USA Inc or Venus Concept Canada Corp. This type of marketing activity will be deemed as a material breach of the Agreement. "Venus" is a registered trademark of Venus Concept and cannot be used in any advertising without the prior expressed written consent of Venus Concept USA Inc or Venus Concept Canada Corp. Failure to comply will be seen as causing damage to Venus Concept and therefore may result in financial penalties. In the event of failure to comply, Venus Concept reserves the right to take any action necessary to rectify the breach of the agreement. This action may include (but may not be limited to) denying activation code(s) for an unlimited period of time, and/or terminating the agreement.

19-04099-pjs · Doc 1 · Filed 02/26/19 · Entered 02/26/19 17:01:32 · Page 18 of 20
Page 7 of 7
Venus Concept · 4556 N. Hiatus Road · Sunrise · Florida · 33351 · USA · Phone: 1-888-907-0115 · Fax: 855-907-0115
www.VenusConcept.com
Customer Initials _____

# EXHIBIT 2

| Debtor Transferor | Transferee | Form of Transfer | Date of Transfer | Transfer Amount |
|---|---|---|---|---|
| AAE | Venus | ACH | 11/29/2018 | $20,000.00 |
| AAE | Venus | ACH | 12/03/2018 | $20,000.00 |
| BCA | Venus | ACH | 12/11/2018 | $20,000.00 |
| AAE | Venus | ACH | 12/17/2018 | $20,000.00 |
| BCV | Venus | ACH | 12/27/2018 | $10,000.00 |
| BCA | Venus | ACH | 12/28/2018 | $10,000.00 |
| BCA | Venus | ACH | 01/02/2019 | $20,000.00 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $32.44 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $32.29 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $32.41 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $33.91 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $33.68 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $33.21 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $33.15 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $33.15 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $32.20 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $33.30 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $32.29 |
| BCV | Venus | Credit Card Charge | 01/03/2019 | $33.99 |

| BCV | Venus | ACH | 01/03/2019 | $1,172.58 |
| BCA | Venus | ACH | 01/11/2019 | $20,000.00 |
| AAE | Venus | ACH | 01/22/2019 | $20,000.00 |
| AAE | Venus | ACH | 01/30/2019 | $10,000.00 |
| | | | | $151,568.60 |